In both federal penitentiaries and in oil company headquarters, people who are viewed as cooperating with the authorities may be treated with disdain. And such was the case for my client Kevin Wallace who faced conflict over a period of two years with his immediate supervisor Claude Moreau over a variety of compliance issues in which Kevin Wallace was trying to get his company to do the right thing, to be compliant with antitrust and SOX compliance regulations. And Claude Moreau was putting the kibosh on his efforts to the point of even terminating an internal control that Kevin Wallace had proposed that would have discovered, rooted out, and prevented the price signaling concerns that he had raised. Now, a retaliation claim arises from an adverse action. It is, after all, the adverse action that's retaliatory. In this case, Claude Moreau, in 2010, made the decision to fire Kevin Wallace after this two years of conflict over compliance issues culminating in the year in which the Idaho Falls and the 2009 SOX compliance certificate came up. Kevin Wallace's initial complaint to OSHA clearly identifies this discharge. As the adverse action that he wants OSHA to investigate, to determine whether or not that termination violated SOX. After waiting more than 180 days required by the statute, he exercised his right to seek de novo review in the federal court. And in a series of motions and amended complaint, motions to dismiss and amended complaints, Tesoro Council in the court required Kevin Wallace to plead his claims with specificity under Rule 9B. So he wrote a second amended complaint trying to meet that standard. I'm just curious, were you involved on the trial court level in drafting the complaints? I was. Drafting these complaints that you weren't involved in the drafting of. That's correct. I was retained. We had two or three, three different. Three amended complaints. Uh-huh. Okay. Well, the court said that the second amended complaint was not specific enough as to wire fraud to meet 9B. So that's why they filed the third amended complaint, to comply with the magistrate judge's requirement. And then when you get to the third amended complaint, the magistrate judge now says, I realize I was mistaken. Rule 9B does not apply because this is a retaliation case and not a fraud case. Also, the magistrate judge found the third amended complaint was sufficient to state a claim of protected activity based on the wire fraud concerns. But unfortunately, the magistrate judge said those issues had not been presented in the initial OSHA complaint. So case dismissed for failure to exhaust. Now, the word exhaust does not appear in the SOX statute. And I suggest that the word exhaust can have several different meanings. And I think it would be very helpful if this court can be explicit about what meaning it's using if it chooses to use this word. To me, I think the natural meaning of the word exhaust is to pursue an administrative process to its conclusion. SOX clearly does not require this because it permits the complainant to opt out, to kick out to federal court after the 180 days. At the time, Congress knew that the Department of Labor whistleblower process was running very slow. It was bogged down. Congress had loaded up many different laws that had employee protections and had not incrementally increased the funding of the Department of Labor to handle all those cases. Isn't this contrary, though, to the position that your client took in the district court regarding whether there's an exhaustion requirement? I think this is really an issue of semantics. You know, his contention below was that he met the exhaustion requirement by filing this complaint. And what I'm saying is that he met the statutory requirement to file a complaint by filing a complaint. His complaint clearly identified the adverse action and was sufficient for the Department of Labor to determine that he had engaged in protected activity. The Department of Labor, after receiving a large amount of information from the employer and interviewing only employer-side witnesses. Well, again, just more specifically to my question, I thought that the record reflects that in objecting to the magistrate judge's recommendation that the statement was made that both sides argued, I guess this was from the magistrate judge, that both sides argued that the Title VII standard applies in this case, referring to exhaustion. I understand, but what . . . I'm just asking what position did your client take in the district court regarding whether there's an exhaustion requirement? There's no dispute that there is a requirement to pursue the administrative process before going to the district court. And what I'm suggesting is that it's just a semantic matter as to how we label it. And I understand that exhaustion is the term normally used, but I think it's very helpful to define what that term means. And that has not been done carefully in this case yet. So the position that you're stating today, as I understand it, is just that once the 180 days is run, that any requirement that there might be has been satisfied? Well, at the time I submitted my brief, I didn't have the benefit of the Department of Labor's brief. They filed their brief after mine. And I take to heart what they say about how the Department of Labor complaint is meant to initiate an investigation. And the scope of that investigation can expand beyond the four corners of the complaint. And in fact, they deem the information that the department gets through that investigation to be part of the complaint that they will adjudicate. So in light of the fact that the initial complaint is meant just to trigger the investigation, and as the Fourth Circuit said in Jones versus South Peak, it's not meant to be a tripwire. I suggest the appropriate standard is that any claim is proper and the district court will have jurisdiction over any claim that the Department of Labor could have considered under the same process. And I believe that's consistent with what the Supreme Court said in Holowecki, which is that we look to the administrative agency's own rules and regulations to determine whether or not the submission is sufficient to invoke that agency's jurisdiction. And I think it's hard to trip up Wallace on that when the Department of Labor's regulation, which is different than the EEOC regulation at issue in Holowecki, the Department of Labor's regulation says no particular form of complaint is required. And the Department of Labor will consider the complaint supplemented with information obtained in an interview, an interview for which there was no interview. So we go beyond the complaint and also look and see what type of investigation has been initiated and what they've gone into. And what's been gone into is what determines whether or not there's exhaustion or not. We don't limit ourselves to just a complaint. That's exactly right. I thought your argument went beyond that. I thought you're saying that you look at what they actually investigated that went beyond the complaint and what the department could have investigated. Is that your argument? And so even if the department, it wasn't raised at the department at all, if they had kept digging and could have found it, your position is it can be raised in district court. Well, I think that there are some limitations on that. Indeed, the Ninth Circuit saw that. What's your argument? Tom Saeedi's. Okay. What is your argument? Well, my argument is that if the claim could have been adjudicated in the Department of Labor based on the same process. Even if it wasn't? Even if it wasn't? Well, yeah. The same standard is used in Title VII. You know, district courts will take jurisdiction over claims that could have grown out of the EEOC administrative process, you know, if EEOC had done a correct and proper investigation of them. But here, the regulations at the Department of Labor are even more lax than what they are at EEOC. And I think applying Holowecki, you know, leads to a very open administrative process in which claims can be supplemented throughout the administrative process and therefore should be subject to the same type of supplementation at the district court. Now, in Tom Saeedi's, the court recognized some limit. If you're going to add a new party who did not have notice about the claim and the opportunity to preserve evidence, you know, then it would be unfair to add them in at the subsequent proceeding because they would not have had fair notice that there's a claim against them. But in this case, Tesoro clearly had notice of the OSHA complaint. They were very active in participating in the OSHA investigation. Were these issues all raised in the investigation? Are there some that could have been raised that you could determine that they likely could have been raised? Which ones were in the complaint? Which ones were raised in the investigation? And which ones could have been raised in the investigation? Well, initially, I'd like to hone in on what you mean by ones because Tesoro takes the position that every item of protected activity is a separate claim. But, you know, in my initial remark, I suggest that's an incorrect analysis because the claim arises from the adverse action. And Tesoro clearly had notice that Wallace was contending his termination violated SOPS. And that gave them, even under Rule 8A, notice pleading standards, notice of the claim against them. The individual protected activities are bits of evidence, and there has never been a requirement that a party plead all of his evidence in the complaint. So I think the whole concept of slicing up each protected activity as a separate claim is incorrect because the claim arises from the termination, not from the protected activity. And indeed, it would be improper to decide which protected activities are or are not proper evidence until you get to trial and you have a chance to consider the evidence in relationship to all the other evidence. That's what the Supreme Court required in Sprint versus Mendelsohn, that evidence be considered in light of the other evidence. And it's really improper to try to slice it up and say that this particular protected activity is what caused the discharge and not that one. When, in fact, as the courts in Halliburton, this court in Halliburton and the Ninth Circuit and Tom Osaites said that motivation can arise from a spectrum of activities. And the court and the jury, the finder of fact, does not have to make a specific link between one protected activity and the adverse action, but rather can hear about all the protected activity and decide whether or not that was a cause of the termination at issue here. I'm wasting my time. Well, you actually sort of got bogged down on the exhaustion question. I'll give you two more minutes if there's anything else that you want to cover in your opening argument. Right. Well, I do notice that Tom Osaites, I'm sorry, that Tesoro really focuses on the 9B pleading standard. But as I said, you know, this is a retaliation claim, not a fraud claim. And in fact, there's no requirement that Wallace actually plead or prove fraud. He only has to show that he had a reasonable basis to believe that there was a violation under SOX. And as to the protected activity and the certifications, you know, those are proceedings required by SOX. You know, the Congress in crafting SOX recognized that the type of compliance program they wanted to have after the Enron scandal would, you know, couldn't be done entirely by the SEC. So they shifted the compliance burden to the companies themselves and required that they have internal audits, internal controls, and proceedings to identify and root out violations. And the SOX, you know, the certification that corporate officers had to file is part of that process. And if you recognize this claim as participation under Section A2 of SOX, you know, then there's no reasonable belief requirement at all because the participation itself is protected. You know, employees have to be free to say yes on the SOX certification in order for the program to work. Thank you. All right. Thank you. And you still have your four minutes for rebuttal. All right. For the Department of Labor, as amicus, I'll let you do the pronunciation. Good morning. May it please the Court. I'm Radha Vishnu Vajula for the Secretary of Labor. I'd like to make three points today. First, that Mr. Wallace did administratively exhaust his claim of retaliation for reporting wire fraud. Second, that the heightened pleading standard of Rule 9b does not apply in SOX retaliation claims. And third, that the district court erred in finding Mr. Wallace's complaints about booking taxes as revenue and retaliation reported in the 2008 Certificate of Compliance were unprotected. Let me ask you before you get, what difference do we apply or should we apply any to the Secretary's interpretation of these regulations? Is there an, our interpretation, Skidmore or Chevron, or does any of that apply in this case? What, what deference should we give to the Secretary's interpretation of these regulations? So, the Secretary's interpretation is certainly entitled to Chevron deference, and the Third Circuit in Wiest v. Lynch found that the ARB's decision in Sylvester was entitled to Chevron deference, which interpreted the regulations and, you know, overturned the definitively and specifically standard that had been applied earlier. I believe the Second Circuit in Nielsen applied Skidmore deference. So, the Secretary's interpretation is certainly entitled to Chevron deference, and the Secretary would urge you to find that. And under the regulations that were in place in 2010 when this complaint was filed with OSHA, there was no formal pleading standard for OSHA complaints. All that was required was a full statement of the acts and omissions and the pertinent dates, which were believed to constitute the violations. In the preamble to the regulations, the Secretary explained that he intentionally did not require a detailed administrative complaint because the purpose of that administrative complaint was to trigger an investigation. And even a highly educated complainant might not have the legal expertise to plead a prima facie case of a violation. And as the Southern District of New York explained, a plaintiff can exhaust his administrative remedies when the OSHA complaint includes specific adverse employment actions, protected activity, and the general nature of the facts that formed his belief in the violations. And the district court complaint can then include more specific allegations that naturally originate from those initial claims. Mr. Wallace's OSHA complaint here included the same activity that he complained about later in his district court complaint. He attached to his OSHA complaint the 2008 Certificate of Compliance, where he checked yes to the question of whether there was anything that he was aware of regarding agreements with competitors about pricing or anything else that would implicate competition law. He then wrote an explanation saying that he was asked to participate in activity that he thought would result in market manipulation by changing the way to SORO posted its prices in response to customer demands. And then during the course of the investigation with OSHA, he provided even more detailed information about how he believed to SORO was providing early disclosure of to SORO's daily price moves in exchange for the competitor's price moves. In the second amended complaint, he then recited the elements of the wire fraud statute and went into even more detail about this price signaling and inconsistent discount scheme. And in the third amended complaint, he went into even more detail to try to meet the standard of 9B, which the magistrate judge found that he did. And furthermore, the purpose of administrative exhaustion is to put the agency on notice of what claims to investigate and to put the parties on notice of the claims against them. Mr. Wallace's OSHA complaint here clearly was enough to put the agency on notice of what to investigate because the agency did in fact find protected activity regarding Mr. Wallace's reports of price signaling and market manipulation. And my second point is about the pleading standard for retaliation claims. The secretary urges his court to agree with the magistrate that the heightened pleading standard of Rule 9B does not apply in SOX retaliation claims. The claimant issue here is of retaliation and not of fraud. And this court has acknowledged that a reasonable belief of a violation is what must be alleged and a reasonable but mistaken belief can still be protected. So there's no reason for this court to require pleading fraud with particularity when the existence of fraud is not what a plaintiff ultimately has to prove. A complainant only has to establish a reasonable belief of a violation but not the violation itself. And as the Fourth Circuit explained earlier this year in Jones v. South Peak, protected activity does not require proof that the employer's conduct was legally actionable fraud. So to not protect a potential whistleblower from retaliation if they happen to be mistaken about the alleged fraud or if they just didn't happen to have all the information they needed in order to plead to the heightened pleading standard of 9B could have a chilling effect on potential whistleblowers. And third, I would just like to say that the district court did err in finding Mr. Wallace's complaints about booking taxes as revenue and retaliation in the 2008 Certificate of Compliance were not protected. And the magistrate should not have applied the definitively and specifically standard that Mr. Wallace had to link his complaints to one of the six enumerated categories of SOCs. Thank you. Mr. Jefferson. May it please the court. The district court's judgment should be affirmed for at least two reasons. First, Kevin Wallace, who was represented by counsel when he filed his complaint with OSHA, never once mentioned nor raised any facts amounting to wire fraud, mail fraud, securities fraud, or any of the other SOCs categories. As a result, OSHA conducted a vast investigation over a five-month period, interviewing 22 witnesses with Tesoro's full cooperation. In fact, Tesoro even waived attorney-client privilege. And OSHA explored what Wallace presented. Tax fraud, antitrust, potential retaliation, but not any of these six OSHA categories. OSHA didn't investigate wire fraud because none of Wallace's claims in the OSHA complaint remotely suggested that Wallace reasonably believed that Tesoro's conduct amounted to wires fraud. Now, an OSHA investigation is an adversarial proceeding under 49 U.S.C. 42-121. And in that context, the rationale for requiring exhaustion is at its greatest. We've cited to the court the U.S. Supreme Court decision of Sims v. Apfel for that purpose. Exhaustion is important because it facilitates the administrative agency's investigation of conciliatory functions, and it recognizes the agency's role as the primary enforcer of the SOCs anti-retaliation remedy. And because a SOCs complaint is immediately forwarded to the Securities and Exchange Commission, it also affords that agency, the SEC, the opportunity to conduct prompt enforcement actions for conduct that threatens shareholders. And second, as this court has recently held, a critical focus in all of these SOCs cases must be on whether the employee reported conduct that he reasonably believed constituted a violation of federal law. The case of Villanueva v. Department of Labor makes that point explicitly. None of Wallace's four complaints in the OSHA complaint allege that prior to this litigation, prior to this very litigation that he filed in district court, that he reasonably believed that Tesoro deceived anyone, misrepresented any facts, or used interstate wires to further any fraudulent activity. Or, for that purpose, that Tesoro had the requisite mens rea amounting to a conscious intent to defraud. Nor could he reasonably believe that the SEC reports contained intentional misrepresentations. As we showed you in our brief, those reports disclose the very booking taxes as revenues that he complains about in OSHA and in the district court. He says in his reply brief that the 10-Ks, the annual SEC filings, dealt with excise taxes. But his complaint at OSHA was much broader, included state, county, other taxes beyond excise taxes. It included more. We quoted, actually, what the 10-K said. And I think it had additional, things additional to excise taxes. But the point was that Tesoro was disclosing that they were booking revenues taxes. So there's no way that he can have formed a reasonable belief that Tesoro was trying to hide from the SEC this very important point. Now, the exhaustion, I think, is extremely important. As a precondition, it's a precondition to seeking judicial relief under Sarbanes-Oxley. Congress has required that employees first go to OSHA. And this makes OSHA investigate the claim and potentially resolve it. It was written in the aftermath of Enron. It ensures that the SEC is apprised early on of the kind of fraud that can devastate shareholders, and depending on the fraud scale, inflict major collateral damage on the economy. So under Mr. Wallace's view, he says the OSHA complaint is merely something like a charging statement. So it doesn't matter what the content or the substance is of it. It doesn't matter at all. As long as he filed an OSHA complaint, then he can file anything he wants in the district court. But the structure of the Sarbanes-Oxley makes it essential that he files what he seriously believes to be one of the six categories of fraud so that the SEC can take that on in order to restore trust in financial markets. That's why the complaint is immediately sent to SEC that can then bring enforcement action. The way that Wallace advocates this statute, OSHA's role in adversarial SOX complaints would be completely undermined. It would just not matter anymore. And we point to McCart versus United States in Supreme Court case. We believe that this is the perfect vehicle to hold without equivocation that exhaustion is required. And what would be the result of that? It would become the subject of every SOX continuing education seminar. Everyone will know that one or more of the six categories must form the basis for the complaint, that it will not be enough merely to parrot the words wire fraud. Via Naweeva, the complainant said wire fraud, but of course it didn't apply to. It wasn't contesting fraud, U.S. mail fraud, but Colombian laws. And it would show that a complaint must provide factual support. And this comports with the regulations that were actually in place at the time Wallace filed his complaint, not the regulations that Mr. Renner mentioned. That regulation, as the Department of Labor just conceded, says that the complainant must provide OSHA a full statement of the acts and omissions with pertinent dates, which are believed to constitute violations, and identifying the underlying protected activity or conduct. If you will look at the OSHA complaint, it's about three or four pages long, very sparse. And it does not, it does not mention wire fraud, but more importantly, it does not set forth any facts that would support a wire fraud claim. Judge Prado, we agree that you can look beyond just the complaint and look to the investigation of what documents were discovered and what information was gathered by OSHA. But even when you look at that, there is no, they never did bring any kind of claim for wire fraud, or that Tesoro reasonably believed that he was complaining about wire fraud, or that Mr. Wallace even said to Tesoro that you're committing wire fraud in these various areas. So what's the standard that should govern? I think that's an important question. It goes, Judge Prado, to your question about deference. There was a case just a few years ago, Allen v. ARB, in which this court held that an OSHA complaint must, quote, definitively and specifically relate to one of the six enumerated categories in Section 1514A. Well, opposing counsel says, well there's been an intervening decision, a case called Sylvester, and you should apply deference to that. But I want to make two points on that. Number one, a case called Riddle v. First Tennessee out of the Sixth Circuit cited in our brief said, no, that standard still governs, citing Allen, it's a Sixth Circuit case. Number two, the Department of Labor in Vienna Waiver was an amicus in that case as well, and the Department of Labor in that case said, Allen is still good law on this precedent, in oral argument. I listened to the oral argument because it was so close to this case, and the department conceded that that's the case. And third, I would say, Chevron deference wouldn't apply here to pleading standards that are applicable to SOX claims in federal court. If we're talking about a claim that's in federal court, then the Sylvester standard that applied to the ARB wouldn't apply here. Congress, of course, gives federal courts discretion to develop their own procedural rules, including pleading standards. What about the applicability of Rule 9b? That's where I'm headed, exactly where I'm headed, because that is a rule of procedure that is applicable in federal court that says in fraud cases, you have to plead with particularity. And we think you can't, that the court should not defer to a proceeding, an administrative proceeding to which Chevron deference would apply when you're looking at a federal rule of procedure that Judge Beery, of course, is going to apply because it governs federal proceedings. There's another case after Allen and after Sylvester from the Second Circuit, which we've cited to the court. It's Nielsen versus AECOM technology. If the court doesn't think that definitively and specifically relate applies, that court says that a 1514A complaint must at least approximate the specific elements of the enumerated provisions allegedly violated, and the violation must be material. That court said, thus the language suggests that to be reasonable, the purported whistleblower's belief cannot exist wholly untethered from these specific provisions. And I think that applies here, too. And a third way to look at it would be under 29 CFR sections, 1980, which we quoted in the brief, and the department stated here that the complainant must file a full statement of the actual and omissions with pertinent dates, which were believed to constitute violations, and identifying the protected authority or conduct. Now, just going back, in the May 17, 2010 OSHA complaint, it was filed by Mr. Katzman, who was Mr. Wallace's lawyer at the time. There was no allegation whatsoever in that complaint of any kind of wire fraud. And nowhere during the entire administrative proceeding that lasted five months did Mr. Wallace assert that he informed to Sorrell that it was intentionally misrepresenting the facts in order to gain some kind of advantage. Wire fraud has, at its core, the notion of a misrepresentation. The very crux of that claim is some sort of lie. And during those entire proceedings, you won't see that mentioned by Mr. Wallace. His OSHA allegation is not that to Sorrell altered publication practices of posting the shell wholesale branded price. That's also in the May 17 allegation, because Mr. Wallace said in the certificate, 2008 Certificate of Compliance, he said we did not even make that request to change. He was complaining about wholesale prices, but then he said that never occurred here. And so he can't be complaining about an action that didn't happen. And in any event, the allegation, that allegation is very vague. It says nothing about fraudulent use of wires, or it's silent about any scheme to defraud. And I think it is critical to understand. That is why OSHA never investigated that claim as an allegation of a SOX wire fraud claim. At the time of Wallace's complaint, the regulations required specificity. That didn't happen here. And anyway, in his third amended complaint, he took him four, you know, different complaints to get to this point, the, he didn't allege that the opus, the opus allegation is wire fraud. And that's, I think, where the department goes astray, because they see that as the way to tie in wire fraud to his original complaint. There's another complaint, in addition to this scheme of wire fraud, that he didn't complain during OSHA, but now he complains in the third amended complaint. And it has something to do with Idaho Falls. Antitrust issues in Idaho Falls involving an apparent oral agreement with a customer to match gas prices with a particular station. Well, there's no contention, again, in the May 17, 2010 OSHA complaint, or in any proceeding afterwards during the OSHA investigation that Tesoro lied or defrauded in any way shareholders or anyone else with respect to that claim. And so there could be no reasonable belief that Wallace was reporting wire fraud, because there's no allegation of fraud whatsoever. In addition, he never reported this matter to Tesoro before he was terminated, which is a requirement under OSHA. At the record, at page 426, he concedes. He didn't complete his investigation nor report it before he was terminated. So the magistrate judge properly found that that claim was dismissed. And he didn't, Mr. Wallace, this is a procedural point that I think is important on the Idaho Falls point, is Mr. Wallace did not oppose. No opposition whatsoever to Tesoro's motion to dismiss with respect to the Idaho Falls allegations. And then fundamentally, none of the facts revolving around Idaho Falls show any subjective belief that Tesoro committed a SOX violation. Now, the booking taxes as revenues, again, I think that's a red herring, because they, the court, I mean, the SEC itself said that the revenue includes excise taxes collected by our retail segment. They also say that that was in your 2009 10-K, which the reporting was done in 2010, and that you didn't correct it for the 2008. Dr. Tesoro didn't correct it for the 2000, didn't disclose it in the 2008 10-K. And that's just factually incorrect. If you look at the record at pages 958 through 959, and at pages 965 through 67, 967, that's where the form 10-Ks are there, in 2008 and in 2009. And in those two reports, Tesoro reported that the revenue includes excise taxes collected by our retail segment, and that it includes federal excise and motor fuel taxes are included in both revenues and cost of operating, of sales and operating expenses. So, significantly, Wallace can't establish that reporting taxes as revenue was done by Tesoro with any mental state approach, approaching an intent to deceive, manipulate, or defraud shareholders. But why doesn't he satisfy the reasonable, but mistaken belief standard as to the taxes? Because you have to look at him as the vice president that he was, the expert in financial matters for Tesoro. That's what you do when you look at objective reasonableness. It's not enough that he may subjectively have believed this. There has to be objective, objective, reasonable belief. And under that, you look at the standard of someone with his seniority, vice president, his responsibility over financial matters. And anyone with that sort of experience is expected, if you're going to make a claim that you're not reporting something to SEC, that you would go look at SEC filings, the 10K filings. And there you would find, as we have shown. What about the lawyer's statement that this was illegal or improper? The lawyer, well, the booking taxes as revenues being illegal or improper. Again, there is no, there's no allegation when Tesoro itself is filing document, the very documents that they're complaining of with the SEC, that this could in any way be an intent to defraud anyone, shareholders or anybody else. So that, I don't think, as a matter of law, that would confer objectivity on this, in this area. And it's interesting, you talked about the lawyer. Well, how about Mr. Wallace himself? The record at page 1023, there's an email from Mr. Wallace in which he stated that external retail, this is the reporting to the Securities and Exchange Commission on this tax issue, could be okay because it's treated differently in the intercompany process. So a statement that Tesoro's SEC reports could be okay is far from providing information to Tesoro about fraudulent conduct that Tesoro is committing. And finally, I'd say with respect to the taxes, in his OSHA complaint, Wallace admits that he had not informed Tracy Jackson, who is Tesoro's auditor, of this reported external retail segment tax issue due to his termination. So one of the elements to prove a SOX claim is that you reported it to the employer. That did not happen here by his own concession. And then, you know, the brief talks about, well, there are, what about the internal reports that were not submitted to the SEC? I think there are a couple answers to that. One is that if you look at the SEC rule on SOX internal controls, the SEC itself has said this was not intended to cover internal reports that were not submitted to the Securities and Exchange Commission. And then this is a question that was directly addressed by this court in Allen versus the ARB. That's the 2008 opinion that I referred to earlier. That was a case in which the complaint was about a company's internal financial documents. This court held, we find that Allen's general inquiries concerning SAB 101 compliance in the company's internal financial documents, which she knew were not released to shareholders, do not constitute protected activity under Sarbanes-Oxley. And I think that is exactly the situation here. So there's no objectively reasonable belief that Tesoro misrepresented facts in its SEC filings. We think the exhaustion requirement is vital to the proper handling of these administrative proceedings under Sarbanes-Oxley. And we think a holding to that effect, well, it won't help Mr. Wallace because the decision will be to signal to plaintiffs who have legitimate claims that they need to seriously pursue them through OSHA, in which many of those can be resolved, in which the Securities and Exchange Commission can be notified if there is a serious problem. And that Sarbanes-Oxley as a whole will work to protect fraud and to prevent the sort of Enron disaster that prompted the legislation in the first place. And we think if we retreat from that, there's going to be a serious problem undermining the OSHA investigation in the first place. And for all of those reasons, Tesoro would ask that the judgment be affirmed. All right. Thank you, Mr. Jefferson. Mr. Renner, you saved time for rebuttal. The OSHA investigation did recognize that wire fraud is one of the elements protected by Sarbanes-Oxley. And it did find that Kevin Wallace had engaged in protected activity by four times raising his antitrust concerns. In the record at page 267, you'll see a chart from Kevin Wallace that he prepared to show the ways in which the antitrust allegations involved electronic communications that accomplished the misrepresentations at the heart of Tesoro's representation of the public that they engage in uniform pricing, when in fact they were not. And they were using their customers to tip them off about the price changes on the markets regulated by the Commodity Futures Trading Commission. And they were also receiving information from their customers about what their competitors were doing. And their communications about that are what constitute wire fraud. Now, there's no requirement that Kevin Wallace understand or even communicate to his employer that he's put the pieces together to see that this is a wire fraud violation. The Sylvester decision, which is in the record, makes that clear. That's at page 15 of the Sylvester decision. Now, my colleague here does not want to accept the Sylvester decision. Let me say a few words about First Allen. In Allen, this court was reviewing a case that had been fully exhausted at the Department of Labor. It went to a full evidentiary hearing and a decision on the record that was reviewed by the Administrative Review Board and affirmed there and then affirmed here by the Fifth Circuit. So it did not deal with pleading standards. It dealt with a fully tried record. And that's why the standards are quite different between Allen and here. But at the time of the Allen decision, the Department of Labor's position was based on the Platoon standard for definitively and specifically identifying protected activity. That is the holding that the Administrative Review Board changed in Sylvester. And after that change, in the Villanueva case, where the Department of Labor was a party, this court adopted the Sylvester standard. So the current law has changed on that point from what was said in Allen about being definitively and specific to the reasonable belief standard adopted in Sylvester, in which the reasonable belief, the basis for the reasonable belief does not have to be communicated to the employer. All an employee has to do is reveal what side they're on. Are they on the side of compliance or are they on the side of concealment? Kevin Wallace repeatedly showed that he was on the side of compliance through his certification reports, his disclosures to his supervisor, Moreau, his communications with internal compliance and Tracy Jackson. And it is true that that one allegation he had not raised with Tracy Jackson, but the pleading makes clear that he did inform his supervisor, Claude Moreau, who was the one who then fired him. So that is plenty sufficient enough to show employer knowledge. As to the Villanueva decision, there, this court determined that the concern about Colombian tax liability did not constitute protected activity. Here, Kevin Wallace is raising a concern about the taxes imposed by the United States government and state and local governments. Tesoro disclosed after Kevin Wallace raised this concern in 2008, in 2009 when they issued their 2008 10-K that's in the record, you know, then they disclosed the excise taxes, but they did not disclose many of the other taxes that were also being included. And indeed, Kevin Wallace had a reasonable basis about his concerns, you know, even though he's not a lawyer, even though he's not an accountant. Tell us again, which ones were still not disclosed in your view? The state, there were state and local taxes that are not excise taxes. There are income taxes. There are, what do they call it, inventory taxes. There's a variety of, it's in my brief, there's a quotation to what the allegation is and the complaint about the additional taxes that were not disclosed. If you like, I'll follow 28-2. You can wrap up in two sentences if you like. Okay. Or one long sentence would be fine. Mr. Jefferson would have us believe that because SOX claims are so serious, they have to be pled with such specificity, but this and the definitively and specifically standard are precisely the types of impediments to SOX success that Professor Moberly cited as why SOX failed to prevent the 2008 fiscal crisis. And the Department of Labor has learned from that. That is reflected in Sylvester and that is why the court should adopt the new standard. Thank you. All right. Thank you, Mr. Renner. Your case is under submission. The court will take a brief recess.